Good morning. My name is Vicki Merol Buchanan. I'm here on behalf of Jesse Mendez, and I would like to reserve three minutes, please. Jesse Mendez is spending life plus 23 years for the attempted murder of Officer Kevin McDonald. Neither the trial judge nor the jury knew that there were two eyewitnesses that saw the shooting and identified the shooter as Jeremiah Dye, not Mr. Mendez. And the reason that the judge and the jury did not know about the eyewitnesses is three reasons, each of which warrants habeas relief. First of all, just a minute, ma'am, if I might. It seems to me, reading the record, that counsel knew what the exculpatory evidence was, didn't they? Trial counsel had, the only thing he knew was the preliminary trial testimony. Yes, he did. Trial counsel. He knew the material that was directly exculpatory was disclosed to trial counsel, correct? In the preliminary hearing, yes. And therefore, the only thing we're talking about is if these items, which are merely added, well, I don't even know that they add anything because he had all the exculpatory stuff right in front of him, he knew about that. All this is, is do we have other extraneous information which could have been also supplantive or saying that that was true, even though everybody said it was true, that that is somehow a violation of Brady? Isn't that what we're arguing about? That's one part of Brady. However, the information that was withheld was a lot more than one line out of a preliminary hearing. It gave the identity of the witnesses. It gave details of the witnesses, of what they observed and how they were credible as to why they knew that it was Jeremiah Dye that shot them. Well, what do we do? Let's just start out, I guess, if I take Cunningham versus Wong. It says that if trial counsel is aware of the essential facts enabling him to take advantage of any exculpatory evidence, then there's no trouble. And that's exactly here. Counsel knew there was an informant who had claimed to have seen the shooter hide under the house. Counsel knew the identities of the officers who'd spoken to the informant. In fact, counsel had their notes. Counsel had the cell number of the informant that he gave to the officers. And counsel had the recorded interview of one of the officers speaking with the informant. He had all that. Yes. And he asked for it from the government. But he had all of it. He asked from the state. He had it all. So what is the Brady violation? He didn't have the testimony, the statement of Officer Wingate, which was very important, and identify the information. He didn't follow up on the Brady material. He didn't even go and bother. That's an effective assistance of counsel, but it's not Brady. Right. So what did he not know from this one officer whose statement he had that was material to discovering the evidence which you claim was so crucial in this case? I, one of the officers, Officer Mork, in particular, described how the witnesses were able to observe and were credible. Officer Roach testified specifically and in detail as to why he shot Jeremiah Dye based on what he specifically individually heard. Um, uh, in. Does that, does that make, give them any information other than what the officer that you had, the trial counsel had gave them? I mean, the trial, the officer, trial counsel knew through the officer's statement that he had that Dye ran out of the car and went and hid under the, the, uh, house and he was fingered by some witnesses as a shooter. And he explicitly argued it in closing argument, even though he was not allowed to get the evidence in. He's explicitly said the informant advised that not only had he observed the shooting exit the vehicle, he also observed that person go underneath the house. And of course that raises the question. And that is the obvious question. Is the shooter under that house? Yes, he was. That was Jeremiah Dye. He's the person that the informant observed exit the vehicle and go into the crawl space. So, you know, I agree on first blush. I was thinking this, why does this information not turned over? Why is it not allowed? But it was allowed. It was in evidence. And you have the officer who got shot absolutely identify your client as the person who shot him. Whereas the informants were like, pay me the money. I'm not going to testify. I don't want to get involved. And of course, the better the information, the more money I can get. So I'll say I saw the shooter and I'll get $5,000. If I just say I saw the, the other guy, maybe I'll only get $2,000. So you got issues here. Um, as far as, as that's concerned, the, they gave the information before they got the money, they gave it twice. They came back several times. The officers, each one of the other important instances of the other officers testimony is that all four of them went to great pains to talk about how specific the information was from the individuals, from the witnesses and how credible they were. And that was before they were paid any money for anything. And why would they choose to say it was Dye or Mendez or something else? All they had to say was the guys under, a guys under the house. Why were they so specific about who they specifically saw? Officer Wingate specifically asked, he's the lead guy. He was the lead investigator. He specifically asked, how do you know it was Jeremiah Dye? How do you know it was the passenger that shot the officer? And he said, I saw it. I saw him shoot him. So there's some information. The problem comes, and again, I'm trying to take your arguments and apply them to the case law that we have here. I mean, Roviero says the prosecution is not required to voluntarily disclose information that would help identify a non-testifying confidential informant unless the defense adequately shows a need for such information. I guess I'm trying to figure out why this information you now seek helps with that. Even when you had at that point, the cell number of the informant, if it was necessary to find the informant, why didn't you find him? Are you specifically asking me? I'm asking counsel. I didn't say you were, but it seemed to me what you're really saying to me is I need all this info, but even when they got info, they didn't do anything with it. That was six years after the incident. So that was the appellate counsel had a cell phone number and he had the identification six years later from some young teenagers who are no longer, maybe even in the neighborhood. Okay. So let's go to the statement. If there is a statement that this informant was supposed to give, as my colleague suggested, I don't think this statement was even a statement against penal interest. I don't think this statement, it was only suggested if he could get a reward for it. It was contrary to all the other evidence. I'm trying to figure out why the judge would have let it in. Well, he probably, there are several instances where he could have let it in as a direct evidence, direct evidence in impeachment of, of, of, of the officer. Also, he was allowed to impeach and he was allowed to talk about this, if you will, different evidence in his closing argument. First of all, closing argument is not evidence. And this is the first, this is the first time he mentioned it. He had opportunity after opportunity. And that goes to the other issue in this case of, as far as the State is concerned. The State lied. Now, that isn't something, they flat out lied in the pretrial statements to the judge who was not at the preliminary hearing, had no clue about the preliminary hearing. He lied directly to that judge and said the only person identified as the shooter by anyone in this case is defendant Mr. Mendez. That was in the pretrial. Now, of course, counsel for Mr. Mendez didn't say anything either at that point in time. So I'm not, I'm not taking his side that he did anything right. I think if nothing else, we have a very clear case of ineffective assistance of counsel for not doing anything to even look for these people or to, to impeach. Well, my worry about this argument is that even though he says there's no other leads other than the ones we've told you about on cross-exam, he said another officer had received information from a citizen informant that the suspect had been hiding beneath the house. I mean, he was cross-examined about the very statement you said was a lie and he gave different testimony. He did not suggest that. And there was other evidence that the suspect was under the house, was die, and then he committed the shooting. So there was no evidence that he was the shooter. There was lots of evidence that he was a suspect. That suspect could be one of two. Correct my words and I'll take that correction. So, and, but that wasn't, it was under the house and he was a suspect. And the officer himself, who you said lied, said on cross-exam that another officer had received information from a citizen informant that the suspect was hiding beneath the house. The suspect, yes sir. Well, and that suspect was the person that we believe shot Officer McDonald. That's what counsel said in opening statement, that Sergeant Jones would testify that we have a suspect laying here in the street. That's the person that we believe shot Officer McDonald. So, I mean, the evidence was before the jury. It was, Officer McDonald must have been a very credible witness that he's the one who got shot. He saw the person who shot him and there was plenty of light to see. I mean, why would he not have a better view than these two informants who saw something after the shots? Why would they be watching otherwise? And then piece together a scenario. Well, that's the testimony of Officer Mork. They actually saw it straight on. They saw the shots fired. That's one of the points in this case. Also, that doesn't make up for the fact of what Sergeant Jones said to the jury. The jury specifically came out and asked him at the end of his testimony, so you're the lead prosecutor, you're the lead person in this case. And therefore, have you eliminated all of the possibilities of anyone else, including the passenger, shooting Officer McDonald? Which is why I never let the jury ask questions. And he said, no, we've ruled everybody else out. Well, he did say we've ruled everybody else out, but the honest truth is, at that point, he may have ruled everybody else out. But it may not have been right to rule them out. All he was saying is that he ruled them out. Now, I agree with my colleague. Juries don't ask questions in my trials. They're not to produce the evidence or even come up with the evidence. That's for somebody who has the burden of proof. But nonetheless, in this particular instance, I'm having a tough time. And the biggest problem I have, and this is on the second point, the California Supreme Court, I have to give them some deference. Don't I? You do. They didn't rule on this. Well, the California Supreme Court said at Mendez's trial, the jury heard testimony there was a second person in the car with Mendez. There was an informant who directed the police to the house on Parker. Dye had been considered a suspect. Dye had been shot and killed by the police at the house within hours of the shooting of Officer McDonald. Then they said Sergeant Jones's testimony was contradicted by the testimony. Jury already had the information evidencing. The police had leads, thus immaterial. And the California Supreme Court said, okay, I'm not aware of the Supreme Court or the California Court of Appeal. I'm not aware. Is that the Supreme Court or the California Court of Appeal? I'm confused. California Court of Appeal. Court of Appeal, sorry. I said Supreme Court to rule. Okay. Something interesting that the California Court of Appeal said after the petition for rehearing, wherein he was the California Court was finally alerted to the fact that there was a preliminary hearing, the preliminary hearing testimony. There was nothing about that until the petition for rehearing. And the California Court of Appeal said, okay, that looks like pretty strong evidence that this guy was the eyewitness and saw the shooting, and you should have been able to impeach Sergeant Jones on that. And what the California Court of Appeal said is counsel did not alert the trial judge, who did not preside at the preliminary hearing to Jones's prior testimony. If you go to the California Court of Appeal's opinion, there are 11 instances where they call out specific deficient performance on behalf of trial counsel. Now, as far as the as far as Officer McDonald and his testimony and the evidence of the who shot him, it's not that clear. Officer McDonald changed his testimony once again from the preliminary hearing, and he was not impeached once again by trial counsel. So that was that the shooting was not that clear. In order for him to have shot, either one of these people, to have shot Officer McDonald where he claims he was next to the vehicle, they would have had to shoot through one or two or the back seat to shoot him, because he said he was behind Mr. Mendez. So his testimony was an ironclad. The jury, the jury obviously thought there was something to the fact that there was another shooter besides Mr. Mendez, and I see my time has expired. I'll give you two minutes for rebuttal. Thank you. Thank you. May I please the Court? Allen Yano for Respondent. I think the Court understands what our position was in terms of the Brady issue, so I won't repeat what was in the brief. The one point I would like to direct the Court to is, as Judge Smith stated, this is or as he, I'd like to expand on his point, which is that this is an ADBA case, and so there's deference given to the court of appeals opinion and there's deference given to the California Supreme Court's opinion on habeas, or decision on habeas corpus. I think what's significant about the decision on habeas corpus is that it's an implied ruling that the defendant could not have gotten this evidence in under State law had he made the, based on the allocations that he made in the habeas corpus petition. So I would. What evidence are you referring to, sir? Pardon me? What evidence are you referring to that he could not have got in? Oh, the statement, the statement from the informant. Who didn't want to testify and refused to testify. Right. I would have let it in because I would have said this evidence is so overwhelming that the defendant is going to get convicted. I don't want this issue to ever come up on appeal. So, you know, could you get it in? Of course you could get it in. Ed Chen is a wonderful trial judge. I'm not criticizing him. But tell me why it is, you were not the prosecutor down below. That's right. But how does the prosecutor not track down these audio tapes? I mean, you know, you can't just rely on the cops to turn things over to you. You have to say, well, let me go to Internal Affairs and see what they have. Let me go here and see what they have. How did that happen? Well, my understanding, the only thing is I recall from the record about that was that this was in the Internal Affairs file and it wasn't disclosed until they had completed their investigation of Dyer, had done something in connection with that investigation. I really don't know why he didn't, subjectively, I don't know why he didn't do it. But that was what I recall what the record shows in terms of the reason that it was not immediately turned over. But I do want to emphasize a couple of things. Counsel stated that something about not having Wingate's statement, but counsel did have Wingate's identity and counsel knew that Wingate was there. Other than that, unless there is something the Court wants me to address, I'm willing to submit it. Do you have any questions? No. Thank you. Ms. Buchanan, you didn't even take a chance to take a deep breath or anything. No, I didn't. Go back up there. Actually, as far as Officer Wingate is concerned, I think this Court really needs to look at ineffective assistance of counsel. You're talking about getting a statement, and I think there's a way that an investigator a day or two after the preliminary hearing, which was right after the incident, could have found these witnesses now and had had the actual live witnesses there to testify. They may have. But why not try? Isn't that something that is ineffective assistance of counsel, to not even look? You have to show more than he should have done things that he didn't do, but that it would have affected the outcome of the case. Okay. One thing he said was Officer Wingate. He was he called these officers and he couldn't tell the judge anything about why he was calling him, because he couldn't remember what had happened beforehand. And he said, in fact, it was Officer Wingate, probably the most important other witness in this case. He said, oh, I don't need him. So he submitted that. I don't think you can find anything in the record that shows that this man was competent, this attorney was competent. In fact, he showed the jury a videotape wherein Sergeant Jones, after he didn't get the statement he wanted in before the jury, where Sergeant Jones says the driver of the Pontiac shot the witness. Now, that was a self-inflicted injury. And the jury in this case didn't just run out and convict Mr. Mendez. They spent four days looking at it and they spent a lot of time with the gunshot evidence. So this isn't a slam dunk. There certainly was enough to create reasonable doubt in this case. We need to have fair trials, and Mr. Mendez did not have a fair trial. Thank you. Roberts, thank you very much. The Court thanks counsel for their argument, and the case of Mendez v. Swarthout will be submitted.
judges: Bea, N.R. Smith, Lasnik